# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 7, 2017 Session

## DALE ROBERT SCHERZER v. MELISSA MARIE SCHERZER

**Appeal from the Chancery Court for Williamson County**
**No. 40104     Michael W. Binkley,  Judge[1]**

---

### No. M2017-00635-COA-R3-CV

---

In this post-divorce action, the husband filed a petition to terminate or modify $2,000.00 in monthly transitional alimony that had been previously awarded to the wife as part of the marital dissolution agreement incorporated into the divorce decree.  Following a bench trial, the trial court found that the wife was cohabiting with her fiancé and had failed to rebut the statutory presumption, pursuant to Tennessee Code Annotated § 36-5-121(g)(2)(C), that she was either providing support to or receiving support from a third person and no longer needed the amount of alimony previously awarded.  The trial court suspended the husband's transitional alimony obligation retroactive to October 2015, the month when he had begun to deposit payments into an escrow account at the court's direction.  The court also awarded to the husband attorney's fees and expenses in the amount of $19,331.50.  The wife has appealed.  Having determined that the wife failed to rebut the statutory presumption, we affirm the suspension of the husband's transitional alimony obligation.  However, having also determined that the evidence does not support a finding that the wife had the ability to pay the husband's attorney's fees, we reverse the trial court's award of attorney's fees to the husband.  We decline to award attorney's fees incurred on appeal to either party.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which RICHARD H. DINKINS, J., joined.  W. NEAL MCBRAYER, J., filed a separate concurring opinion.

Adrian H. Altshuler and Charles G. Blackard, III, Franklin, Tennessee, for the appellant, Melissa Marie Scherzer.

Mary Arline Evans, Nashville, Tennessee, for the appellee, Dale Robert Scherzer.

---

[1] Sitting by interchange.

# OPINION

## I. Factual and Procedural Background

On May 29, 2012, the petitioner, Dale Robert Scherzer ("Husband"), and the respondent, Melissa Marie Scherzer ("Wife"), were divorced by entry of a final decree in the Williamson County Chancery Court ("trial court"), with Judge Derek K. Smith presiding. The trial court concomitantly approved and entered a marital dissolution agreement ("MDA") and a permanent parenting plan order providing for the parties' daughter ("the Child"), who was a minor at the time of the divorce judgment. The parties had been married for twenty-two years and had two children together, the oldest of whom, a son, had reached the age of majority by the time of the divorce. The Child was born in September 1997 and graduated from high school while the instant proceedings were pending.

As relevant to this appeal, the MDA includes the following provision:

> **Insurance and Alimony:** Husband shall pay to Wife the sum of $2,000.00 per month transitional alimony on the 1st of each month beginning June 1, 2012 and continuing for a period of 96 consecutive months for a total of 96 payments of $2,000 per month. Said alimony is taxable to Wife and deductible to Husband for federal income tax purposes. Husband will name Wife as a beneficiary of a life insurance policy in the amount of $200,000.00 to secure the alimony and child support obligation contained in the Permanent Parenting Plan, through the child's graduation from high school (May of 2016) at such time Husband's insurance obligation will be reduced to $100,000.00 to secure Husband's alimony obligation to Wife. Said alimony shall terminate upon either party's death or the remarriage of Wife. Proof of the policy in force shall be provided to Wife each year. Other than stated above, each party shall receive their own life insurance policy. Any value in any of the current insurance contracts: CUNA, American General, Prudential Life and Central Union shall split equally between the parties. Each party shall assume responsibility for the payment of their own life insurance policies effective June 1, 2012.

When he filed the instant petition, Husband had regularly paid the $2,000.00 in monthly transitional alimony and maintained the life insurance policy as agreed in the MDA. If left unmodified, Husband's eight-year transitional alimony obligation to Wife would have terminated by operation of the MDA with a last payment due on May 1, 2020. Pursuant to the parties' agreed permanent parenting plan order, Husband also paid

to Wife $1,000.00 per month in child support. Wife does not dispute that at the time of trial in this matter, Husband had paid his child support obligation as ordered. During the pendency of this action and upon Husband's unopposed motion, the trial court entered an order on June 21, 2016, terminating Husband's child support obligation because the Child, then eighteen years of age, had graduated from high school.

At the time of the divorce judgment, Wife and the Child had relocated from Tennessee to Pennsylvania to reside with Wife's sister. Wife had worked part-time at a Hallmark shop in the past, and upon relocating to Pennsylvania, she initially obtained similar employment at a Hallmark shop there. Wife subsequently rented a separate residence for herself and the Child in June or July of 2012. Also in July 2012, Wife met David L. McKinnis and began dating him. As evinced by Facebook posts presented at trial, Wife and Mr. McKinnis announced their engagement on December 25, 2013. On January 17, 2014, Wife and Mr. McKinnis purchased, as joint tenants with right of survivorship, a parcel of real property improved with a house in the process of being constructed.

As of trial in the instant action, Wife and Mr. McKinnis had not married, but they were residing together with the Child in the residence they had purchased. Documents presented at trial also demonstrated that Wife and Mr. McKinnis had jointly purchased and financed a new vehicle, a 2015 Ford Escape ("the Escape") in May 2015. Testimony indicated that to purchase the Escape, Wife traded in a vehicle she had owned individually, and Mr. McKinnis traded in one of two vehicles he had owned individually. According to Wife, she regularly drove the Escape and made the financing payments related to it. At the time of trial, Wife was employed as a leasing consultant for a condominium community and earned a net income of approximately $2,444.26 per month, although this income varied somewhat depending on commissions earned. Mr. McKinnis testified that at the time of trial, he was employed full-time as a landscape and maintenance technician, earning $13.00 per hour.

On February 5, 2015, Husband commenced the instant action by filing a petition to terminate or modify alimony pursuant to the cohabitation provision of Tennessee Code Annotated § 36-5-121(g)(2)(C). He also requested an award of attorney's fees and costs. Wife filed a response on March 18, 2015, asserting as affirmative defenses that under the MDA, the statutory cohabitation provision did not apply and that she continued to need transitional alimony. Wife requested an award of attorney's fees and costs as well.

Wife subsequently filed a motion for summary judgment on June 10, 2015, asserting in her "Statement of Undisputed Facts" that Tennessee Code Annotated § 36-5-121(g)(2)(C) was inapplicable because the parties had been aware of the cohabitation statute and had specified in their MDA the conditions upon which transitional alimony

could be terminated with no mention of cohabitation. Husband filed a response in opposition to Wife's motion on July 31, 2015. Following a hearing conducted on August 28, 2015, with Circuit Court Judge Michael W. Binkley now sitting by interchange, the trial court entered an order denying Wife's motion for summary judgment on September 22, 2015. Pursuant to a subsequent order entered by the trial court on October 15, 2015, Husband paid his monthly alimony payments into an escrow account from that date forward, pending the outcome of this action.

The trial court conducted a bench trial on November 9, 2015, during which the parties and Mr. McKinnis testified. In a Memorandum and Order entered April 8, 2016, the court granted Husband's petition, suspending the transitional alimony and awarding to Husband reasonable attorney's fees. The court determined that (1) "the provision in the parties' MDA for termination of alimony upon death or remarriage does not modify, limit or supersede the statutory right to modification of alimony upon cohabitation with a third person, pursuant to § 36-5-121(g)(2)(C)"; (2) Wife was undisputedly cohabiting with Mr. McKinnis, raising the statutory presumption that because she was either contributing to Mr. McKinnis's support or he was contributing to hers, she no longer needed the amount of transitional alimony previously awarded; (3) Wife had "failed to rebut the presumption that she [was] either receiving support from or giving support to Mr. McKinnis"; and (4) Wife had failed to rebut "the presumption that she no longer has a continuing need for the award of alimony." The trial court further found that the alimony should be suspended retroactively to the date that Husband had begun making the payments into an escrow account pursuant to the court's October 15, 2015 order, with the effect that Wife was not required to reimburse any payments that she had actually received.[2] Upon finding that a possibility still existed that Wife could seek a modification in the future based on changed circumstances, the court did not alter Husband's life insurance obligation pursuant to the MDA.[3] As to the award of attorney's fees, the court directed Husband's counsel to submit an affidavit detailing reasonable fees and costs.

Husband's counsel filed an affidavit setting forth attorney's fees and costs in the total amount of $19,331.50 on April 18, 2016. Wife subsequently filed a motion to alter or amend the judgment, pursuant to Tennessee Rule of Civil Procedure 59, on April 22,

---

[2] Neither party has raised an issue on appeal regarding the trial court's discretionary decision to make the suspension of transitional alimony retroactive to the opening of the escrow account. *See Howell v. Howell*, No. M2005-01262-COA-R3-CV, 2006 WL 1763660, at *4 (Tenn. Ct. App. June 28, 2006) ("The decision whether to retroactively apply a reduction in a support obligation to the date of filing the petition is within the sound discretion of the trial court.").

[3] Husband has not raised an issue on appeal regarding the continuation of his obligation to maintain life insurance.

2016, asserting that (1) the trial court had erred in suspending the transitional alimony because the MDA was a contract not subject to modification and (2) no contractual or statutory basis existed for the award of attorney's fees. Husband filed a response objecting to the motion. In a Memorandum and Order entered August 3, 2016, the trial court denied Wife's motion as to the first issue, determining that Wife was attempting to re-litigate an adjudicated matter. The trial court reserved the attorney's fee issue, requesting that the parties submit additional evidence relevant to the factors underlying an initial award of support.

Upon Husband's subsequent motion for attorney's fees and costs, Wife filed a response in opposition, arguing in part that the statutory factors for an initial award of alimony should not apply because Husband had never been a disadvantaged spouse and Wife believed she had established her need for transitional alimony. The trial court conducted a hearing on September 19, 2016, during which Wife was represented by counsel but did not appear personally, and Husband appeared with counsel. The trial court subsequently entered an order on October 21, 2016, stating that Wife had not contested the reasonableness of the amount of attorney's fees requested by Husband and reserving the issue of whether the alimony suspension would be retroactive to the filing of the petition.

On February 21, 2017, the trial court entered an "Order for Award of Attorney's Fees and Expenses and Retroactive Application for the Modification of Alimony," confirming that the suspension of transitional alimony would be retroactive to October 15, 2015, the date when Husband began placing the alimony in escrow, and awarding to Husband attorney's fees and costs in the amount of $19,331.50. Wife timely appealed.

## II. Issues Presented

Wife presents five issues on appeal,[4] which we have restated as follows:

1. Whether the trial court erred by suspending Wife's award of transitional alimony pursuant to Tennessee Code Annotated § 36-5-121(g)(2)(C) in light of the transitional alimony provision in the parties' MDA.

2. Whether the trial court erred by finding that Wife had failed to rebut the presumption that she no longer needed the amount of transitional alimony previously awarded based on support she was receiving from or providing to a third party.

---

[4] In her presentation of the issues, Wife combines the fourth and fifth issues concerning attorney's fees at trial and on appeal. For clarity's sake, we have separated the issues here.

5

3. Whether the trial court erred by awarding to Husband attorney's fees and expenses.

4. Whether the trial court erred by declining to award to Wife attorney's fees and expenses.

5. Whether Wife is entitled to attorney's fees and expenses on appeal.

Husband presents the following additional issue, which we have similarly restated as follows:

6. Whether Husband is entitled to attorney's fees and expenses on appeal.

## III. Standard of Review

We review a non-jury case *de novo* upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

In this case, the trial court found that the statutory presumption concerning cohabitation applied despite the absence of cohabitation as a condition terminating transitional alimony in the parties' MDA. In reviewing the trial court's suspension of transitional alimony, we must therefore consider the parties' MDA provision as well as the cohabitation statute applied by the trial court. Marital dissolution agreements are contractual and, once approved by the trial court, "become legally binding obligations on the parties." *Long v. McAllister-Long*, 221 S.W.3d 1, 8-9 (Tenn. Ct. App. 2006), *perm. app. denied* (Tenn. Jan. 29, 2007). However, obligations concerning the two "notable exceptions" of child support and alimony do remain modifiable by the courts. *Id.* at *9 n.7.

We review issues of contract interpretation *de novo*. *See Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013). As this Court has previously explained:

In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002) (citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." *Planters Gin Co.*, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. *Planters Gin Co.*, 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." *Id.* (quoting 17 Am. Jur. 2d, Contracts, § 245).

*Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693, 698 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. Jan. 30, 2006).

Likewise, we review issues of statutory interpretation *de novo*, adhering to the following longstanding principles:

When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998). Further, the language of a

statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." *Marsh v. Henderson,* 221 Tenn. 42, 424 S.W.2d 193, 196 (1968). Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. *Tenn. Elec. Power Co. v. City of Chattanooga,* 172 Tenn. 505, 114 S.W.2d 441, 444 (1937). We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed. *Owens v. State,* 908 S.W.2d 923, 926 (Tenn. 1995).

*In re Estate of Tanner*, 295 S.W.3d 610, 613-14 (Tenn. 2009).

Regarding alimony, our Supreme Court has "repeatedly and recently observ[ed] that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). As to the standard of appellate review applicable when a modification of alimony is at issue, our Supreme Court has explained:

Because modification of a spousal support award is "factually driven and calls for a careful balancing of numerous factors," *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989), a trial court's decision to modify support payments is given "wide latitude" within its range of discretion, *see Sannella v. Sannella*, 993 S.W.2d 73, 76 (Tenn. Ct. App. 1999). In particular, the question of "[w]hether there has been a sufficient showing of a substantial and material change of circumstances is in the sound discretion of the trial court." *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999) (citations omitted). Accordingly, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes." *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998); *see also Goodman v. Goodman*, 8 S.W.3d 289, 293 (Tenn. Ct. App. 1999) ("As a general matter, we are disinclined to alter a trial court's spousal support decision unless the court manifestly abused its discretion.").

*Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001); *see also Wiser v. Wiser*, No. M2013-02510-COA-R3-CV, 2015 WL 1955367, at *3 (Tenn. Ct. App. Apr. 30, 2015), *perm. app. denied* (Tenn. Sept. 17, 2015).

We also review a trial court's award of attorney's fees according to an abuse of discretion standard. *See Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn.

2011); *In re Estate of Greenamyre*, 219 S.W.3d 877, 886 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. Mar. 12, 2007) ("[A] trial court will be found to have 'abused its discretion' only when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.") (internal citations omitted).

## IV. Applicability of Tennessee Code Annotated § 36-5-121(g)(2)(C)

Wife contends that the trial court erred by applying Tennessee Code Annotated § 36-5-121(g)(2)(C) (2017) to suspend the transitional alimony because the parties' MDA did not contain a cohabitation clause. She relies upon the maxim of *expressio unius est exclusio alterius* to argue that because the parties did not include a cohabitation clause, one should not be implied in interpreting the MDA as a contract. *See S.M.R. Enters., Inc. v. S. Haircutters, Inc.*, 662 S.W.2d 944, 949 (Tenn. Ct. App. 1983) (explaining in the context of interpreting a contract that *expressio unius est exclusio alterius* means that "the expression of one implies the exclusion of the others" or "[s]tated differently, where a contract by its express terms includes one or more things of a class it simultaneously implies the exclusion of the balance of that class."). Husband asserts that the language of the transitional alimony provision in the MDA mirrors the language of the statute and that the trial court properly exercised its authority to apply the statute. Upon careful review, we conclude that the trial court properly applied the cohabitation statute to this action.

Tennessee law recognizes four types of spousal support: (1) alimony *in futuro*, also known as periodic alimony; (2) alimony *in solido*, also known as lump-sum alimony; (3) rehabilitative alimony; and (4) transitional alimony. Tenn. Code Ann. § 36-5-121(d) (2017); *Mayfield v. Mayfield*, 395 S.W.3d 108, 115 (Tenn. 2012). Transitional alimony, at issue in the case at bar, "is appropriate when a court finds that rehabilitation is not required but that the economically disadvantaged spouse needs financial assistance in adjusting to the economic consequences of the divorce." *See Gonsewski*, 350 S.W.3d at 109 (citing Tenn. Code Ann. § 36-5-121(d)(4), (g)(1); *Riggs v. Riggs*, 250 S.W.3d 453, 456 n.5 (Tenn. Ct. App. 2007)). As our Supreme Court has explained:

> Transitional alimony assists the disadvantaged spouse with the "transition to the status of a single person." [*Gonsewski*, 350 S.W.3d] at 109 (internal quotation marks omitted). Rehabilitative alimony "is designed to increase an economically disadvantaged spouse's *capacity* for self-sufficiency," whereas "transitional alimony is designed to aid a spouse who already possesses the capacity for self-sufficiency but needs financial assistance in adjusting to the economic consequences of establishing and maintaining a household without the benefit of the other spouse's income." *Id.* Consequently, transitional alimony has been described as a form of short-

9

term "bridge-the-gap" support designed to "smooth the transition of a spouse from married to single life." *Engesser v. Engesser*, 42 So.3d 249, 251 (Fla. Dist. Ct. App. 2010).

Transitional alimony is payable for a definite period of time and may be modified only if: (1) the parties agree that it may be modified; (2) the court provides for modification in the divorce decree, decree of legal separation, or order of protection; or (3) the recipient spouse resides with a third person following the divorce. Tenn. Code Ann. § 36-5-121(g)(2).

*Mayfield*, 395 S.W.3d at 115.

In this case, the relevant sentence in the MDA alimony provision states: "Said alimony shall terminate upon either party's death or the remarriage of Wife." The statute likewise provides for termination of transitional alimony upon the death of either the payor or the payee and also provides that a trial court, when entering the initial order granting transitional alimony, may add other conditions that would cause the alimony to terminate, such as remarriage. *See* Tenn. Code Ann. § 36-5-121(g)(3)-(4) (2017). As noted in *Mayfield*, 395 S.W.3d at 115, the statute further provides the following contingencies that may operate to render transitional alimony modifiable:

(2)     Transitional alimony shall be nonmodifiable unless:

(A)     The parties otherwise agree in an agreement incorporated into the initial decree of divorce or legal separation, or order of protection;

(B)     The court otherwise orders in the initial decree of divorce, legal separation or order of protection; or

(C)     The alimony recipient lives with a third person, in which case a rebuttable presumption is raised that:

(i)     The third person is contributing to the support of the alimony recipient and the alimony recipient does not need the amount of support previously awarded, and the court should suspend all or part of the alimony obligation of the former spouse; or

(ii)     The third person is receiving support from the alimony recipient and the alimony recipient does not need the

10

amount of alimony previously awarded and the court should suspend all or part of the alimony obligation of the former spouse.

Tenn. Code Ann. § 36-5-121(g)(2) (emphasis added).

At the outset, we find that in support of her argument, Wife has relied in part on appellate decisions addressing requests for modification of alimony *in futuro*. Transitional alimony was added as a type of alimony to Tennessee's statutory scheme through an amendment, effective August 8, 2003, to what was then Tennessee Code Annotated § 36-5-101(d)(1). *See* 2003 Tenn. Pub. Acts, Ch. 305 § 1 (S.B. 622); *Cox v. Cox*, No. M2003-01622-COA-R3-CV, 2004 WL 1562516, at *4 n.5 (Tenn. Ct. App. May 5, 2004). Effective July 1, 2005, the General Assembly amended the spousal support statutory scheme in part to recodify what had been the spousal support subsections of Tennessee Code Annotated § 36-5-101 as Tennessee Code Annotated § 36-5-121. *See* 2005 Tenn. Pub. Acts, Ch. 287 §§ 1-2 (S.B. 2091). At that time, the Tennessee law regarding transitional alimony was recodified to Tennessee Code Annotated § 36-5-121(g). *Id.*; *Gillespie v. Gillespie*, No. E2006-00734-COA-R3-CV, 2006 WL 3732195, at *4 (Tenn. Ct. App. Dec. 19, 2006). The 2005 amendment recodifying spousal support also added, for the first time, the cohabitation provision for transitional alimony at issue in this action. *See* 2005 Pub. Acts, Ch. 287 § 2 (S.B. 2091).

However, the cohabitation provision for transitional alimony does utilize virtually the same language as the prior and current versions of the cohabitation statutory provision applying to alimony *in futuro*. *See* Tenn. Code Ann. § 36-5-121(f)(2) (2017) (alimony *in futuro*), -121(g)(2) (transitional alimony); *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 566 (Tenn. Ct. App. 2003), *perm. app. denied* (Tenn. June 1, 2004) (applying the cohabitation provision for alimony *in futuro* then codified at Tenn. Code Ann. § 36-5-101(a)(3)). We therefore note that appellate decisions applying the law as it existed prior to 2005 and to the statutory cohabitation provision for alimony *in futuro* may be considered highly informative in analyzing the statutory cohabitation provision for transitional alimony. *See Hickman v. Hickman*, No. E2013-00940-COA-R3-CV, 2014 WL 786506, at *5 (Tenn. Ct. App. Feb. 26, 2014) ("Because the language at issue in this case [concerning the statutory cohabitation provision for transitional alimony] is identical, prior case law interpreting § 36-5-121(f)(2)(B) [cohabitation provision for alimony *in futuro*] is highly informative and applicable here.").

Wife's argument is that the absence of an agreement in the parties' MDA that the transitional alimony is modifiable based on cohabitation means that the statutory cohabitation contingency does not apply. In support of her position on this issue, Wife particularly relies on this Court's decision in *Honeycutt*, in which this Court determined

11

that the trial court erred by finding that the wife had successfully rebutted the presumption raised by what was then Tennessee Code Annotated § 36-5-101(a)(3) because the parties' MDA expressly provided that the wife's award of alimony *in futuro* would terminate upon her cohabitation with an unrelated male. *See Honeycutt*, 152 S.W.3d at 566 ("Having determined that Wife cohabited with . . . an unrelated male, we find that, under the plain language of the parties' MDA, Husband's alimony obligations are terminated."). Wife similarly relies on this Court's decision in *Myrick v. Myrick*, No. M2013-01513-COA-R3-CV, 2014 WL 2841080, at *5 (Tenn. Ct. App. June 19, 2014), in which this Court determined that an express condition in the parties' MDA that the alimony *in futuro* awarded to Wife would terminate upon cohabitation with any adult third party must be enforced. *See id.* ("We conclude that *Honeycutt* is controlling in this case insofar as it requires the application of contract principles to MDAs, when the dispute concerns an express condition regarding the termination of alimony contained in the MDA."). In contrast to the MDA provisions in *Honeycutt* and *Myrick*, Wife is relying in this case on the absence of language regarding cohabitation in the parties' MDA.

Wife has correctly posited that divorcing parties may expressly contract within an MDA to make transitional alimony nonmodifiable despite the cohabitation contingency provided in the statute. For this point, Wife relies on this Court's decision concerning transitional alimony in *Vick v. Hicks*, No. W2013-02672-COA-R3-CV, 2014 WL 6333965, at *4 (Tenn. Ct. App. Nov. 17, 2014), in which this Court explained:

> Undoubtedly, transitional alimony is generally subject to modification post-divorce if one of the contingencies in Tennessee Code Annotated § 36-5-121(g)(2) is established. Trial courts do possess such authority, as Husband has argued, as a matter of statute. *See* Tenn. Code Ann. § 36-5-121(g)(2) (2014). When, however, parties expressly agree in a marital dissolution agreement that a transitional alimony obligation shall not be modifiable, such an agreement should be deemed to have force. The alimony statutes are not applicable where the parties agree in a marital dissolution agreement to terms different from those set out in the statutes. *See Honeycutt v. Honeycutt,* 152 S.W.3d 556, 563 n.5 (Tenn. Ct. App. 2003); *Myrick v. Myrick,* No. M2013-01513-COA-R3-CV, 2014 WL 2841080, at *4-6 (Tenn. Ct. App. June 19, 2014). Thus, notwithstanding whatever potential relief might otherwise be available generally as a matter of statute, the parties' agreement should take precedence. "Parties should be free to obligate themselves by agreement beyond what the courts could order them to do as a matter of law." *Holt v. Holt,* 751 S.W.2d 426, 428 (Tenn. Ct. App. 1988) (citation omitted). Moreover, the alimony statute specifically contemplates that divorcing parties, will at times, reach their own agreements as to support payments. *See* Tenn. Code Ann. § 36-5-

121(n) (2014) (stating that "[n]othing in this section shall be construed to prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties as to support and maintenance of a party"). In cases such as this one where the parties plainly state that the agreed-upon transitional alimony is nonmodifiable, courts should hold the parties to their agreement.

(Footnote omitted; emphasis added.)

In considering the authorities relied upon by Wife, the trial court found in its April 2016 Memorandum and Order that the factual situations in *Honeycutt*, *Myrick*, and *Vick* were highly distinguishable from the instant action. The trial court determined that in contrast, the parties in this case "did not include any more restrictive terms than the statute, as the parties had in *Honeycutt* and *Myrick*, nor did they include any terms precluding modification altogether, as the parties had in *Vick*." Upon our thorough review of the applicable authorities, we agree with the trial court that the authorities upon which Wife relies are highly factually distinguishable because the parties in this case did not expressly agree in the MDA that the transitional alimony would be nonmodifiable.

Moreover, the three exceptions to nonmodifiability set forth in Tennessee Code Annotated § 36-5-121(g)(2) are separated by the disjunctive conjunction, "or," meaning in this context that any one of the three contingencies may yield transitional alimony modifiable. *See, e.g., State v. Cleveland*, No. W2004-02892-CCA-R3-CD, 2005 WL 1707975, at *3 (Tenn. Crim. App. July 21, 2005) ("It is a well established rule of construction that when the disjunctive conjunction 'or' is used in a statute, the various elements are to be treated separately, with any one element sufficient to meet the objectives outlined in the statute."). Therefore, the plain language of the statute indicates that the parties need not have agreed in the MDA or final decree that the transitional alimony would be modifiable, pursuant to subsection -121(g)(2)(A), or have been ordered by the divorce court to treat the transitional alimony as modifiable, pursuant to subsection -121(g)(2)(B), for transitional alimony to be modifiable upon the recipient's cohabitation with a third party if the recipient is unable to rebut the statutory presumption pursuant to subsection -121(g)(2)(C). *See In re Estate of Tanner*, 295 S.W.3d at 614 ("When a statute is clear, we apply the plain meaning without complicating the task.").

To adopt Wife's argument that the statutory cohabitation provision does not apply because the parties did not expressly include it in their MDA would yield the statutory provision essentially meaningless because divorcing parties always have the ability at the outset to agree that transitional alimony will be modifiable upon the payee's cohabitation with a third party. *See* Tenn. Code Ann. § 36-5-121(g)(2)(A). As this Court has explained:

[W]hen the obligor spouse is seeking a modification of transitional alimony based upon the alimony recipient's cohabitation with a third party, as is the case in this appeal, there is no statutory requirement that either the parties or the court agree to this type of modification in the initial divorce decree or MDA. Instead, the obligor spouse's right to seek modification based on the alimony recipient's cohabitation with a third party is guaranteed by statute. Consequently, if the alimony at issue is properly termed transitional alimony, it is subject to modification pursuant to Tennessee Code Annotated Section 36-5-121(g)(2)(C) regardless of whether the agreed MDA contains express modification terms.

*Miller v. McFarland*, No. M2013-00381-COA-R3-CV, 2014 WL 2194382, at *6 (Tenn. Ct. App. May 23, 2014); *cf. Vicks*, 2014 WL 6333965, at *4 ("When, however, parties expressly agree in a marital dissolution agreement that a transitional alimony obligation shall not be modifiable, such an agreement should be deemed to have force."). We conclude that although divorcing parties may contract to forego the statutory cohabitation exception to the nonmodifiability of transitional alimony provided in Tennessee Code Annotated § 36-5-121(g)(2), they need not include the exception in their MDA for the statute to apply. Wife is not entitled to relief on this issue.

## V. Statutory Presumption

Wife also contends that the trial court erred by finding that she failed to rebut the statutory presumption that she no longer needed transitional alimony because she was receiving support from or providing support to Mr. McKinnis as a third party with whom she was cohabiting. Wife does not dispute that she had been cohabiting with Mr. McKinnis and had bought a home with him as joint tenants with right of survivorship in January 2014, one month after they became engaged. She argues that her testimony, Mr. McKinnis's testimony, and cancelled checks, bank statements, and receipts presented at trial supported her assertion that Mr. McKinnis routinely reimbursed her for his half of mortgage payments and other living expenses. She also argues that she demonstrated her continuing need for transitional alimony because her income and expense statement indicated that without Husband's $2,000.00 monthly alimony payments, she would be left with a deficit of $876.45 per month. In response, Husband asserts that the trial court properly found that the evidence presented at trial preponderated in favor of findings that Wife was contributing to Mr. McKinnis's support and that she no longer needed transitional alimony. Upon a thorough review of the record, we conclude that Wife failed to rebut the statutory presumption.

14

Having first determined that Wife had been undisputedly cohabiting with Mr. McKinnis since January 2014, the trial court properly found that the statutory presumption had been raised that Wife's need for transitional alimony had been reduced or eliminated either because Mr. McKinnis was contributing to her support or because she was contributing to his. *See* Tenn. Code Ann. § 36-5-121(g)(2)(C). At this point, the burden of proof shifted to Wife to rebut the statutory presumption. *See id.* As this Court has explained:

> A finding that an alimony recipient is living with a third person does not end the inquiry of whether transitional alimony should be suspended in whole or in part. *Wright v. Quillen*, 83 S.W.3d 768, 775 (Tenn. Ct. App. 2002); *Strait* [*v. Strait*], [No. E2005-02382-COA-R3-CV,] 2006 WL 3431933 at *5 [(Tenn. Ct. App. Nov. 29, 2006)]. Such a finding "merely shifts the evidentiary burden in a modification proceeding" to the alimony recipient. *Evans* [*v. Evans*], [No. M2002-02947-COA-R3-CV,] 2004 WL 1882586 at *4 [(Tenn. Ct. App. Aug. 23, 2004)]. "Once the presumption arises, the alimony recipient bears the burden of demonstrating a need for the previously awarded alimony, notwithstanding the cohabitation." *Gentry v. Gentry,* No. M2007-00876-COA-R3-CV, 2008 WL 275881 at *4 (Tenn. Ct. App. M.S., filed Jan. 31, 2008) (citing *Azbill* [*v. Azbill*], 661 S.W.2d [682,] 686 [(Tenn. Ct. App. 1983)]).
>
> In order to determine whether the presumption is rebutted, a court must examine the financial circumstances of the alimony recipient at the time of the modification hearing, to see whether the recipient has demonstrated a continuing need for the previously awarded amount of alimony. Tennessee courts have frequently held that an alimony recipient has rebutted the presumption by demonstrating continuing need, despite living with a third person and either receiving support from, or providing support to, the third person.

*Hickman*, 2014 WL 786506, at *7 (additional internal citations omitted). Therefore, the key factual analysis in this case must involve not only whether Wife had contributed to Mr. McKinnis's support but also whether Wife demonstrated her continuing need for transitional alimony at the time of the modification hearing.

In its April 2016 Memorandum and Order, the trial court noted that Wife and Mr. McKinnis had testified that they split all expenses evenly. However, the court found that Wife had failed to present sufficient evidence to support her assertion that Mr. McKinnis paid half of the mortgage and living expenses or her assertion that she continued to need

$2,000.00 in monthly transitional alimony. We will address each prong of Wife's attempted rebuttal to the statutory presumption in turn.

## A. Financial Effect of Cohabitation

Following detailed findings of fact, the trial court stated the following, in pertinent part, in determining that Wife had failed to rebut the first part of the statutory presumption because she had been unable to demonstrate that she did not contribute to Mr. McKinnis's support:

> In attempting to rebut the presumption, Wife and Mr. McKinnis testified as to the method by which he would pay her for his share of the monthly mortgage bill. In her testimony, Wife agreed that "by and large there is always a check that would coincide with one half of the mortgage." In his testimony, when asked "what is the arrangement that you have related to the payment of bills and expenses?" Mr. McKinnis responded that he "give[s] [Wife] a check most of the time for the house payment." Mr. McKinnis also engaged in this exchange with the Court, in which he sought to explain the arrangement between himself and Wife for the payment of expenses:
>
> > MR. MCKINNIS: At the end of the month or reasonably close to the end of the month there is a tab of like the utility bills and things that I purchased on my credit cards, things she purchased on her separate credit card. And to best of my knowledge at the end of the month either I write her checks or I deduct it off my credit card payments I make for my other account, or she does the same thing.
> >
> > . . .
> >
> > THE COURT: . . . Tell me what you said there.
> >
> > MR. MCKINNIS: For example, if I go to the grocery store and purchase groceries for the week on my charge card and it comes to $25 for that part of the thing, at the end of the month to the best of our knowledge we split all of the receipts that I have charged for house expenses and other things related to food, and stuff like that and she does the same thing also. So at the end of the month rather than me give her 25 bucks and

she gives me $25 the best way we found out was to just make it as even as it possibly can that way.

THE COURT: How? . . . How do you actually do that?

MR. MCKINNIS: A lot of times I'll give her a check for the mort[g]age plus some more on there or I'll just –

THE COURT: We have those checks; right?

MR. MCKINNIS: Yes.

THE COURT: You have all of those?

MR. MCKINNIS: Yes.

THE COURT: How many are there?

MR. MCKINNIS: To my knowledge there should be since January of last year, at least 15.

THE COURT: So we have all of those here?

MR. MCKINNIS: As far as I know.

Despite this testimony, there were only two checks admitted into evidence that showed payment in conformity with this arrangement, i.e. payment for half of the monthly mortgage bill. There is only one other check that shows any sort of contribution by Mr. McKinnis to the Wife for house related expenses. Mr. McKinnis testified further as to the availability of more evidence:

[Wife's] ATTORNEY: Sir, when we asked you to present checks that is all you could come up with?

MR. MCKINNIS: To the best of my ability, yes.

ATTORNEY: There are no other checks you are aware of or could produce?

MR. MCKINNIS: No, sir, not at this time.

Additionally, despite Wife's claim that Mr. McKinnis purchases goods or services in order to offset Wife's payment of the mortgage and utilities, Wife was unable to present evidence demonstrating that Mr. McKinnis made purchases that show he was contributing equally to the shared expenses. Finally, neither Wife nor Mr. McKinnis could produce any type of ledger, spreadsheet, or record of any kind that could show evidence of adherence to their alleged arrangement to split the household expenses "fifty/fifty."

Based on the foregoing and the record as a whole, this Court finds that Wife has failed to rebut the presumption that she is either receiving support from or giving support to Mr. McKinnis.

(Internal citations to record omitted.)

Wife argues that the trial court erred in this analysis because (1) six checks admitted into evidence and a deposit into Wife's individual checking account purportedly demonstrated Mr. McKinnis's contribution to the mortgage and household expenses, (2) four checks not admitted into evidence for lack of foundation purportedly should have been considered as proof of "some kind of contribution" to the household, (3) receipts Wife presented at trial purportedly demonstrated that Mr. McKinnis had paid for goods and services related to the household, and (4) the trial court should not have discredited Wife's and Mr. McKinnis's testimony due to lack of documentation. We will address each of Wife's arguments in turn.

First, at the time of trial in November 2015, monthly mortgage payments in the approximate amount of $1,424.65 had been due on the home that Wife and Mr. McKinnis shared for approximately twenty-one months. According to Wife's testimony, she generally wrote checks from her personal checking account for the full amount of the mortgage payment. Wife and Mr. McKinnis each testified that Mr. McKinnis would then reimburse Wife for his half, $712.33, of the payment each month. They also each testified that Mr. McKinnis had paid his half of the mortgage payment in some fashion each month since the parties entered into the mortgage agreement in January 2014. Through Mr. McKinnis's testimony, Wife was able to present six cancelled checks written by Mr. McKinnis on his individual bank account for which he could recall specific purposes. The trial court therefore found that Mr. McKinnis had been able to lay sufficient foundation for these six checks to be admitted as evidence concerning Mr. McKinnis's contribution to the household. *See* Tenn. R. Evid. 901.

However, of the six checks written by Mr. McKinnis that were entered into evidence, only two were for the amount of $712.33, one written to Wife near the beginning of April 2014 and one written to Wife near the end of that same month. A third check was written by Mr. McKinnis to Wife on January 8, 2015, in the amount of $500.00 with a note stating, "Jan. 15 House." Although Mr. McKinnis stated that he did not remember specifically the purpose of this $500.00 check, the trial court accepted it into evidence because of the note referencing the house. Of the other three checks written by Mr. McKinnis and accepted into evidence, one in the amount of $286.50 was written to Jackson Township in May 2014 toward a building permit for a deck built onto the home; one was written to Wife in April 2015 in the amount of $629.50 as reimbursement for one-half of the federal income tax refund attributable to the home's property tax deduction, which Mr. McKinnis had claimed on his individual tax return; and one was written to Wife in April 2015 in the amount of $2,600.00 as reimbursement because Wife had paid the balance on Mr. McKinnis's personal credit card the month before. In addition, Wife's individual checking account statement for June to July 2015 reflected that she had made a deposit in the amount of $712.33. Wife testified that this deposit represented money given to her by Mr. McKinnis to pay his half of the mortgage. In sum, Wife was able to provide documentation that Mr. McKinnis had paid his half of the mortgage payment in full for three months: April 2014, May 2014, and June 2015, as well as documentation that he had paid at least $500.00 toward the mortgage in January 2015.

Second, Wife also presented four cancelled checks, through Mr. McKinnis's testimony, that the trial court declined to admit into evidence. These checks were written to Wife by Mr. McKinnis and drawn on Mr. McKinnis's individual bank account. The trial court ordered that these four checks be marked for identification, rather than admitted into evidence, because Mr. McKinnis was unable to recall specifically why he had written any of them. We note that none of these four checks was written for the amount of $712.33, Mr. McKinnis's half of the mortgage. Although it certainly is possible, as Wife argues, that the checks represented "some kind of contribution" to the household, it is also possible that they did not, as in the reimbursement noted above for Wife's payment of Mr. McKinnis's individual Bank of America credit card balance. As the trial court found, Wife also acknowledged paying Mr. McKinnis's individual credit card balance from her individual checking account on two prior occasions, once in the amount of $1,693.35 in August 2014, and once in the amount of $2,421.06 in November 2014. When questioned regarding whether she could demonstrate that Mr. McKinnis had paid her back for these two credit card payments, Wife responded: "Not specifically that $4,000 but I do have receipts for things, yes."

Regarding a trial court's discretion in admitting evidence, this Court has explained:

19

Admission of evidence is entrusted to the sound discretion of the trial court, and a trial court's ruling on evidence will be disturbed only upon a clear showing of abuse of discretion. A trial court's exercise of discretion will not be reversed on appeal unless the court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining."

*State, Dep't of Children's Servs. v. R.R.'s*, No. E2006-02785-COA-R3-PT, 2006 WL 3431938, at *1 (Tenn. Ct. App. Nov. 29, 2006), *perm. app. denied* (Tenn. Mar. 12, 2007) (quoting *State v. Robinson*, 146 S.W.3d 469, 490 (Tenn. 2004)) (in turn quoting *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997)) (citation omitted). We determine that the trial court did not abuse its discretion in declining to admit these four cancelled checks into evidence due to lack of foundation.

Third, Wife argues that receipts presented through Mr. McKinnis's testimony supported her assertion that he had paid for half of their household expenses in part by paying for household goods and services. Receipts demonstrated that Mr. McKinnis had paid $329.00 for an electrician to install ceiling fans in the home; $2,430.27 for furniture; $2,105.92 for new appliances; $2,228.90 for materials to build a deck on the home; and $360.28 for a deck railing kit. Mr. McKinnis also reviewed a December 2014 Discover credit card statement in his name reflecting two charges of $3,128.00 and $822.00, respectively, for veterinary care. He testified that these charges had been incurred when Wife's dog needed emergency veterinary care and that Wife was in the process of paying him back for those two charges in full.

Mr. McKinnis acknowledged that the cancelled checks and receipts he presented constituted all of the documentation he was able to produce in support of Wife's assertion that he had paid half of the household expenses. We note that according to Wife's testimony, she paid for construction labor for the deck while Mr. McKinnis paid for materials, with each paying approximately half of the total $5,000.00 required for the deck's construction. Mr. McKinnis testified, however, that he had paid the total $5,000.00 for materials and labor for the deck. During her testimony, Wife presented checks that she had written on her individual account to a construction company, totaling $2,175.00, for labor on the deck. During his testimony, Mr. McKinnis acknowledged that he had no documentation of his having paid for the labor costs. Additionally, as Husband points out, the receipt for furniture includes a notation that $2,000.27 of this $2,430.27 expense was financed. Wife did not present documentation explaining who was making payments on the $2,000.27 balance of the furniture financing.

20

Wife maintains that the receipts for goods and services in Mr. McKinnis's name reflect Wife's and Mr. McKinnis's general method of offsetting one expense with another and support her assertion that she was not contributing to Mr. McKinnis's support. In its April 2016 Memorandum and Order, the trial court noted Wife's argument in this regard but found that "Wife was unable to present evidence demonstrating that Mr. McKinnis made purchases that show he was contributing equally to the shared expenses." We determine that the evidence does not preponderate against the trial court's finding that the testimony, cancelled checks, bank statements, and receipts presented by Wife failed to prove an equal sharing of expenses.

Finally, Wife reiterates that she and Mr. McKinnis often exchanged cash to even out their individual contributions to household expenses at the end of each month. She insists on appeal that "the absence of physical proof of cash transactions should not be used as a means to discredit the testimony of [Wife] and Mr. McKinnis." In contrast to Wife's argument, we emphasize that this Court gives great deference to the trial court's determinations of witness credibility. *See In re Abigail G.D.H.*, No. E2011-00118-COA-R3-JV, 2011 WL 3209180, at *5 (Tenn. Ct. App. July 28, 2011) ("In weighing the preponderance of the evidence, great weight is accorded to the trial court's determinations of witness credibility, which shall not be ignored by us absent clear and convincing evidence against those determinations.") (citing *Jones*, 92 S.W.3d at 838); *see also In re Navada N.*, 498 S.W.3d 579, 591 (Tenn. Ct. App. 2016) ("When the resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge, who has had the opportunity to observe the witnesses and their manner and demeanor while testifying, is in a far better position than this Court to decide those issues."). Moreover, our review of the record indicates that Wife's and Mr. McKinnis's respective descriptions of how they settled their finances were often so vague as to make it impossible to discern whether they actually knew how the expenses had been divided each month.

For instance, at the close of Wife's testimony, presented prior to Mr. McKinnis's testimony, the trial court questioned Wife as follows in relevant part:

Trial Court: We have the mortgage you say that most of the time he reimbursed you by check and he put the check or you put the check into the joint account; is that correct?

Wife: Yes.

* * *

21

| | |
|---|---|
| Trial Court: | This big hole we are talking about is everything else. I heard [Husband's Counsel] ask you about the other reimbursements for utilities and all of these other things and I'm hearing that there is no direct trail of checks from your fiancé back into the account for reimbursements. Are you telling me that everything else other than maybe most of the half of the mortgage payments you just pay? |
| Wife: | No, sir. |
| Trial Court: | Okay, then what are you telling me? Where is all of that reimbursement? |
| Wife: | I manually pay the bills every month out of my account. |
| Trial Court: | You told me that. |
| Wife: | And then I'll tell [Mr. McKinnis] what he owes for the 50 percent of the household bills. |
| Trial Court: | But none of that has been traced as a check back into the account, your account, that reimbursement. So, where is it? |
| Wife: | My attorneys have copies of checks that he has written that I didn't have at the deposition. |
| Trial Court: | I have not seen any. |
| Wife's Counsel: | Your Honor, we intend to produce those through our other witness that he wrote those checks to her. |

As explained above, the checks to which Wife and her counsel referred did not demonstrate that Mr. McKinnis had paid half of the mortgage and household expenses. We conclude that the evidence does not preponderate against the trial court's finding that Wife was contributing to Mr. McKinnis's support. Wife failed to rebut this part of the statutory presumption.

## B.  Wife's Need for Transitional Alimony

In its April 2016 Memorandum and Order, the trial court stated the following, in pertinent part, in determining that Wife had failed to rebut the second part of the statutory presumption because she had been unable to demonstrate a continuing need for transitional alimony:

Wife's testimony included the following testimony relevant to continuing need:

Q [Wife's Counsel]:  How is it that you came to live where you are living now?  How did that develop?

A:  After looking around it was just – it was the opportunity again to live in a better neighborhood, keep [the Child] in the same school district, and it was what I could afford.

Q:  When you say it was what you could afford, what were you using to make that consideration of what you could afford?  How did you make that determination?

A:  At that time [Mr. McKinnis] and I had decided to, you know, try to build a relationship.  I needed a place to stay, he needed a place to stay, so we decided to, you know, join forces and purchase a home together for the financial investment.

Q:  And when you did that, did you take into mind that you would receive $2,000 a month from you[r] ex-husband?

A:  Yes.

. . .

Q:  If you didn't have the $2,000 could you afford to live where you are living right now?

A:  No.

Based on this testimony and Wife's Income and Expense Statement, Wife has not rebutted the presumption that she no longer needs the

23

previously awarded amount of alimony. Currently, her income is more than her expenses each month. Further, even excepting the transitional alimony payments from Wife's income calculation, her income would still be more than her expenses. Therefore, this Court finds that Wife has not rebutted the presumption that she no longer has a continuing need for the award of alimony.

Further, modification must also be justified under the factors relevant to an initial award of alimony. *Woodall v. Woodall*, No. M2003-02046-COA-R3-CV, 2004 WL 2345814, at *2 (Tenn. Ct. App. [Oct. 15], 2004). In the context of transitional alimony, the relevant factor is whether "the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce," [Tenn. Code Ann.] § 36-5-121(d)(4), i.e. the recipient's need for assistance in transitioning to the status of a single person. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 109 (Tenn. 2011).

However, the evidence shows that Wife is no longer transitioning to the status of a single person: Wife testified that she has purchased a house and a car with Mr. McKinnis, opened a joint bank account with Mr. McKinnis, gone on vacations with Mr. McKinnis, and generally held herself out to be the wife of Mr. McKinnis. In essence, Wife and her fiancé have shown ever[y] sign, symptom, and badge of matrimony except for the solemnization of their relationship to the legal status of married.

Despite the testimony of Wife and Mr. McKinnis that every household expense is split evenly between them, the evidence shows that Wife has been shouldering a large share of the household expense and mortgage. Helping the alimony recipient begin and build a life with a third party is not relevant to a finding of continuing need. And, while Wife has testified that she needs the alimony, the evidence shows that her continuing need arises from her support of Mr. McKinnis, not because she needs the alimony award to continue to "adjust to the economic consequences of [her] divorce."

Accordingly, this Court finds that Wife does not have a continuing need for the previously awarded alimony.

(Internal citations to record omitted.)

Wife presented an income and expense statement at trial with expense amounts handwritten onto a form and explanations handwritten in the margins in an attempt to

clarify which expenses were shared with Mr. McKinnis and which were individual. Wife then reviewed her statement during her testimony and explained her notations. In the trial court's factual findings in the April 2016 Memorandum and Order, the court found that according to Wife's testimony and income and expense statement, Wife's half of the mortgage and household expenses equaled $1,472.83. To illustrate, the court included the following chart:[5]

| Expense | Amount |
|---|---|
| Mortgage | $1,424.65 |
| Water | $67.00 |
| Electric | $85.00 |
| Phone | $150.00 |
| Gas | $61.00 |
| Household Maintenance | $50.00 |
| Homeowner's Association Fee | $60.00 |
| Sewage | $28.00 |
| Garbage | $20.00 |
| Food | $800.00 |
| Recreation | $200.00 |
| **Total** | **$2,945.[65]** |
| **Total per Person** | **$1,472.83** |

The court also found that based on Wife's testimony and income and expense statement, her individual monthly expenses, apart from the household, equaled $1,847.88. The court included in its findings the following chart:

| Expense | Amount (Wife) | Amount (Child) |
|---|---|---|
| Car Operation | $150.00 | |
| Auto Insurance | $68.00 | |
| Auto Payment | $417.88 | |
| Cell Phone | $232.00 | |
| Clothing | $200.00 | $100.00 |
| School Expenses | $00.00 | $100.00 |
| Recreation | $0.00 | $100.00 |
| Allowance for [the Child] | $0.00 | $60.00 |

[5] In an apparent typographical error, the trial court listed the total expenses for two people on this chart as $2,945.00 instead of $2,945.65. However, the figure for one person, at issue here, was correct in the court's order.

| | | |
|---|---|---|
| Beauty/Barber Shop | $100.00 | $50.00 |
| Investment Account Deposit | $50.00 | |
| Life Insurance | $30.00 | |
| Credit Card | $300.00 | |
| Credit Card | $300.00 | |
| **Total** | **$1847.88** | **$410.00** |

On appeal, Wife adds the total individual expenses from the two charts above to assert that, by the trial court's own findings, her half of the household expenses and individual expenses combined to equal $3,320.71. Subtracting this amount of individual monthly expenses from her undisputed net monthly employment income of $2,444.26, Wife posits that without transitional alimony, she would have a deficit of $876.45 per month. Contrary to Wife's interpretation of the trial court's findings, we determine that the court set forth the above charts as its summary of Wife's testimony and income and expense statement, rather than its conclusion regarding Wife's financial needs.

The trial court ultimately found that Wife had failed to demonstrate that she continued to need transitional alimony because her income at the time of trial was "more than her expenses each month" and because "even excepting the transitional alimony payments from Wife's income calculation, her income would still be more than her expenses." In reaching its conclusion, the trial court appears to have referenced two versions of Wife's income and expense statement that were presented by Husband during his testimony. In particular, Husband reviewed a version of Wife's income and expense statement in which he did not consider Mr. McKinnis's income, split in half the expenses characterized by Wife as "shared" with Mr. McKinnis, and added Husband's $1,000.00 monthly child support obligation to Wife's income. Husband's calculations in this regard yielded what he describes on appeal as "a little extra" amount of income to Wife of $521.54 per month.

As to child support, Wife acknowledged during her testimony that she had not included the $1,000.00 monthly payment she was receiving from Husband in her statement but that she did include $410.00 in expenses directly related to the Child. Although Husband's child support obligation was subsequently terminated by an order entered June 21, 2016, following the Child's graduation from high school, the relevant time period to consider when determining whether alimony should be modified is at the time of the modification hearing in November 2015. *See* Tenn. Code Ann § 36-5-121(g)(2)(C); *Hickman*, 2014 WL 786506, at *7. We note that as income assisting Wife with maintaining a household, child support income should be considered in conjunction with all of Wife's financial assets when determining Wife's need for alimony. *See, e.g., Tait v. Tait*, 207 S.W.3d 270, 277 (Tenn. Ct. App. 2006), *perm. app. denied* (Tenn. Sept.

25, 2006); *Wheeler v. Wheeler*, No. M2012-02154-COA-R3-CV, 2014 WL 1512828, at *18 (Tenn. Ct. App. Apr. 15, 2014), *perm. app. denied* (Tenn. Sept. 2, 2014) (citing with approval the *Tait* trial court's consideration of expert witness testimony "based upon the wife's income from child support, pension, and future social security payments" in determining that the wife's financial assets in *Tait* indicated no need for additional spousal support).

Other substantive differences between Husband's summary of Wife's expenses and the trial court's summary of Wife's testimony and income and expense statement are that (1) Husband included only one-half of the vehicle loan payment for the Escape, titled in both Wife's and Mr. McKinnis's names (a difference of $208.94); (2) Husband did not include the two credit card payments of $300.00 each, or $600.00 total; and (3) Husband did not include $50.00 a month that Wife regularly deposited into an investment account with Investco. We note that even if we were, *arguendo*, to omit the child support income Wife was receiving at the time of trial, these three differences, totaling $858.94, would come very near to the monthly deficit of $876.45 that Wife claims on appeal.

Regarding the two $300.00 monthly credit card payments, Wife testified that she had been making $300.00 monthly payments on a Capital One credit card since the divorce to pay off the charge she had incurred for attorney's fees during the divorce proceedings. According to Wife, she had made the last payment on that original credit card debt for attorney's fees during the month of trial in the instant action. She testified that she currently owed balances on two additional credit card debts for attorney's fees incurred during these proceedings, one for approximately $6,500.00 and one for approximately $3,500.00. At the time of trial, she was, as a matter of course, paying $300.00 per month on each of these amounts. The trial court found in its April 2016 order that Wife's two credit card balances combined constituted her individual debt, as opposed to any debt shared with Mr. McKinnis, in the amount of $10,000.00. As to the monthly $50.00 deposit made by Wife into her Investco account, she testified that it had been her habit to deposit this amount monthly since "long before the divorce."

Wife also argues that the trial court erred by considering the type of relationship she shares with Mr. McKinnis in its finding that she and "her fiancé have shown ever[y] sign, symptom, and badge of matrimony except for the solemnization of their relationship to the legal status of married." We note that Wife is correct in arguing that the type of relationship a party has with a cohabiting third person is irrelevant to whether the cohabitation statute applies. *See Woodall v. Woodall*, No. M2003-02046-COA-R3-CV, 2004 WL 2345814, at *4 (Tenn. Ct. App. Oct. 15, 2004), *perm. app. denied* (Tenn. Mar. 21, 2005) ("[T]he nature of the relationship is irrelevant to the statute.").[6] However, we

---

[6] We are not persuaded by Wife's ancillary argument that her cohabitation with a third party was anticipated at the time of the divorce because she was residing at that time with her sister and her sister's

determine that the trial court's conclusions in this regard were relevant in terms of the undisputed commingling of Wife's and Mr. McKinnis's finances and Wife's disproportionate "shouldering" of the household expenses, as found by the trial court.

We determine that Wife failed to establish any basis for Husband to be responsible for contributing to Mr. McKinnis's half of the Escape financing, Wife's credit card debt attributable to attorney's fees in the instant action, or her deposits into an investment account. Taking into account the child support income received by Wife at the time of trial, we conclude that the evidence does not preponderate against the trial court's finding that Wife's income exceeded her living expenses. The trial court did not err in finding that Wife had failed to rebut the statutory presumption that she no longer needed transitional alimony. Accordingly, the trial court did not err in thereby suspending the transitional alimony awarded in the divorce judgment.

## VI. Attorney's Fees at Trial

Wife contends that the trial court abused its discretion by awarding attorney's fees and costs to Husband because Husband's action was not one to enforce the MDA and because Husband presented no evidence that he was the disadvantaged spouse with greater financial need or that Wife had the ability to pay his attorney's fees. As Wife notes, the trial court in its August 3, 2016 order agreed with Wife that the court did not have authority to award attorney's fees to Husband based on Tennessee Code Annotated § 36-5-103(c) (2017) because Husband's action was not one to enforce the MDA.[7] Instead, the court ultimately awarded $19,331.50 in attorney's fees and costs to Husband

---

family. Wife testified that while living with her sister during the pendency of the divorce, she paid "a little bit each month" to her sister but did not pay rent. One to two months following the divorce judgment, Wife rented a townhouse and relocated there with the Child. We do not find Wife's temporary, short-term arrangement with her sister to be comparable to her cohabitation with Mr. McKinnis because Wife had significantly greater financial obligations and a more permanent arrangement with Mr. McKinnis at the time of trial than she did with her sister at the time of the divorce.

[7] Tennessee Code Annotated § 36-5-103(c) provides:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

as spousal support pursuant to the statutory factors for an initial award of spousal support provided in Tennessee Code Annotated § 36-5-121(i) (2017).

On appeal, Wife requests an award of attorney's fees incurred in the trial court based on her argument that she was attempting to enforce the parties' MDA because the parties did not expressly include a cohabitation provision in their MDA. *See* Tenn. Code Ann. § 36-5-103(c). Having previously concluded that the parties did not need to include a cohabitation provision in the MDA in order for Tennessee Code Annotated § 36-5-121(g)(2)(C) to apply and noting Wife's failure to rebut the statutory presumption, we determine that Wife was not entitled to an award of attorney's fees at trial.

In regard to the trial court's award to Husband of attorney's fees, Husband asserts that during a September 2016 hearing at which Wife's counsel appeared but Wife did not, Wife, through counsel, "waived her objection to the amount or reasonableness of the award" and "simply failed" to present facts related to the statutory factors. We agree that Wife has waived any issue regarding the reasonableness of the amount of attorney's fees, and she has not attempted to raise an issue as to reasonableness on appeal. However, we disagree that Wife failed to present facts to support her assertion that she did not have the ability to pay Husband's attorney's fees because the facts concerning Wife's financial situation were presented exhaustively during trial. In addition, the record indicates that Wife's counsel continued to argue that Wife was the financially disadvantaged spouse. Upon our thorough review of the record and the applicable statutory factors, we conclude that the trial court erred in awarding attorney's fees to Husband because Wife had successfully established during trial that her income and expenses were such that she did not have the ability to pay spousal support.

In its August 3, 2016 order partially denying Wife's motion to alter or amend, the trial court reserved the issue of attorney's fees and requested that the parties either resolve the issue between them or submit additional evidence relevant to the factors underlying an initial award of support. The court stated that "[i]n order to exercise its discretion in a 'just and equitable' manner and 'prevent injustice,'" it would "hold a hearing at which the parties may present evidence relevant to an initial award" under the statutory factors. In its order, the trial court cited this Court's decision in *Evans v. Evans*, No. M2002-02947-COA-R3-CV, 2004 WL 1882586 (Tenn. Ct. App. Aug. 23, 2004). In *Evans*, this Court explained in pertinent part:

> We conclude that ample authority exists to authorize a court to award fees in a modification proceeding on the same basis, and according to the same principles, as a fee award is made in the divorce proceeding and initial award under . . . Tenn. Code Ann. § 36-5-101. Therefore, there

exists a legal ground for the award of fees herein that is alternative, or additional, to the ground relied upon by the trial court.

\* \* \*

Because attorney's fees are considered alimony or spousal support, an award of such fees is subject to the same factors that must be considered in the award of any other type of alimony. Therefore, the statutory factors listed in Tenn. Code Ann. § 36-5-101(d)(1) are to be considered in a determination of whether to award attorney's fees.

*Evans*, 2004 WL 1882586, at \*15-16 (citations omitted).

Some confusion may have resulted in this matter because the trial court, relying on *Evans*, directed in its August 3, 2016 order that the parties "submit evidence relevant to the factors contained within Tenn. Code Ann. § 36-5-101(d)(1)." However, this statutory section is now codified at Tennessee Code Annotated § 36-5-121(i), which provides:

(i)    In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

    (1)    The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

    (2)    The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

    (3)    The duration of the marriage;

    (4)    The age and mental condition of each party;

    (5)    The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6)    The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7)    The separate assets of each party, both real and personal, tangible and intangible;

(8)    The provisions made with regard to the marital property, as defined in § 36-4-121;

(9)    The standard of living of the parties established during the marriage;

(10)   The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11)   The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12)   Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

On August 22, 2016, Husband filed a motion for attorney's fees and costs, stating, *inter alia*, that his counsel had not received a reply to open settlement discussions. On September 9, 2016, Wife filed an opposition to Husband's motion, arguing, *inter alia*, that the statutory factors for an initial award of alimony should not apply because Husband had "never been an alimony recipient in this case because he is not the disadvantaged spouse" and that she continued to believe she had established that her financial situation was unchanged by her cohabitation with a third party. The trial court conducted a hearing on September 19, 2016, during which Wife was represented by counsel but did not appear personally, and Husband appeared with counsel. The trial court subsequently entered an order on October 21, 2016, stating in pertinent part:

[T]he Court finds that [Husband] is present in Court but [Wife] is not, and therefore no proof is offered or factors for the Court to consider. The Court further finds that, through counsel, [Wife] does not contest or challenge the

amount of attorney fees and expenses sought by [Husband].  The Court finds that it is appropriate to review the statutory and/or case law authority relevant to the effective date of alimony modification, as to whether it can or cannot be made effective back to the date of filing the Petition to Modify.  The Court finds that counsel for the parties shall submit directly to the Court the legal authority upon which they rely in support of their positions, no later than September 21, 2016, at which time the Court will issue [its] ruling on the Rule 59 Motion.

On February 21, 2017, the trial court entered its "Order for Award of Attorney's Fees and Expenses and Retroactive Application for the Modification of Alimony," confirming that the suspension of transitional alimony would be retroactive to the date when Husband began placing the alimony in escrow and awarding to Husband the full amount requested in attorney's fees and costs.[8]   As to attorney's fees, the court stated in relevant part:

This matter is before the Court on two remaining issues, namely, the award of attorney's fees and expenses and the retroactive application of the modification of alimony.  This matter was set for hearing on the issue of attorney's fees and expenses filed on behalf of [Husband] as a result of a filing of a *Motion for Attorney's Fees and Costs* by [Husband's counsel].  The Court had previously requested that the parties present to the Court a memorandum regarding attorney's fees and expenses to be awarded under the facts and circumstances of this case, and whether or not this Court had the statutory authority or authority from case law to consider the award of attorney's fees for [Husband].  Additionally, on the issue of retroactive application of an alimony request, although the Court had believed that this issue had previously been resolved, the Court nonetheless asked both parties to present statutory law or case law with regard to the retroactive application of an alimony modification request.  The Court reviewed the information provided to it by the parties, and, the Court was anticipating additional information from the attorneys on both issues, but since that information was not received, the Court now makes the following orders with regard to these two remaining issues.

---

[8] We note that the trial court properly suspended rather than terminated the transitional alimony in this case based on the possibility of a future material change in circumstance prior to the expiration of the original alimony period.  *See Woodall*, 2004 WL 2345814, at *5 ("[A] cohabiting alimony recipient whose alimony is suspended in whole or in part on the basis of Tenn. Code Ann. § 36-5-101(a)(3) could later seek a reinstatement or modification based on changed circumstances, specifically that he or she is no longer living with a third person and is no longer receiving any support from, or contributing support to, that person.").

# I. ATTORNEY'S FEES AND EXPENSES

This matter was heard before the Court on September 19, 2016. At that hearing, [Husband], through his attorney of record, . . . requested that his attorney's fees and expenses be paid to him as a result of his successful request for the termination of his transitional alimony and life insurance obligations previously litigated in this case. Upon the date of the hearing, [Wife] was not present in Court and no proof was offered by her on the issue of [Husband's] request for the payment of his attorney's fees and his expenses in successfully prosecuting his petition. Counsel for [Wife] . . . stated to the Court that he did not contest the reasonableness or necessity of the amount of the attorney's fees and did not contest the expenses being requested by [Husband's] attorney and further stated that he did not believe that attorney's fees would be appropriate in a case involving alimony under the particular facts and circumstances of this case. [Wife's counsel] provided no testimony from his client, who was not present, and the Court received no guidance from [Wife] on the issue of attorney's fees and expenses except for the fact that the reasonableness and necessity of the fees and expenses were not contested. [Wife] further provided no defenses for the discretionary costs and expenses under Tennessee Rules of Civil Procedure 54.04. The Court reviewed the request for attorney's fees and expenses incurred by [Husband], and, after a thorough and complete review of the requested fees and reimbursement of expenses, the Court finds that the attorney's fees requested by [Husband] are both reasonable and necessary and that the costs and expenses incurred by [Husband] are all reasonable and necessary for the prosecution of his case.

Inasmuch as the attorney's fees at issue were in question based on the previous proceedings in the same action, during which Wife presented her income and expense statement, multiple financial exhibits, and detailed testimony regarding her financial affairs, we determine that Wife had presented, prior to the hearing on Husband's motion for attorney's fees, ample evidence regarding her financial status and whether she had the ability to pay attorney's fees as a form of alimony *in solido* to Husband. As this Court explained in *Evans*:

Initial decisions regarding the entitlement to spousal support, as well as its amount and duration, hinge on the unique facts of each case and require a careful balancing of all relevant factors. *Robertson* [*v. Robertson*], 76 S.W.3d. [337,] 338 [(Tenn. 2002)]; *Watters* [*v. Watters*], 22 S.W.3d [817,] 821 [(Tenn. Ct. App. 1999)]; *Anderton v. Anderton*, 988

33

S.W.2d 675, 682-83 (Tenn. Ct. App. 1998). Among these factors, the two considered to be the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay. *Robertson*, 76 S.W.3d at 342; *Manis v. Manis*, 49 S.W.3d 295, 304 (Tenn. Ct. App. 2001). Of these two factors, the disadvantaged spouse's need is the threshold consideration and the "single most important factor." *Aaron* [*v. Aaron*], 909 S.W.2d [408,] 410 [(Tenn. 1995)] (quoting *Cranford v. Cranford*, 772 S.W.2d [48,] 50 [(Tenn. Ct. App. 1989)]); *see also Bogan*, 60 S.W.3d at 730 (holding that in an initial award, the need of the spouse "must necessarily be the most important factor to consider, because alimony is primarily intended to provide some minimal level of financial support for a needy spouse," but in modification decisions that single factor cannot be given greater weight than all other factors.).

*Evans*, 2004 WL 1882586, at *16. Furthermore, we determine that, acting through her counsel, Wife at no time waived her objection to the award of attorney's fees to Husband. She merely waived any objection to the reasonableness of the amount of the fees requested.

The record indicates no proof presented by Husband that he was a disadvantaged spouse. We have previously determined that Wife, based on her income and expenses with the $1,000.00 in monthly child support she was receiving at the time of trial, had, at most, what Husband described as "a little extra" income in the amount of $521.54 per month when her individual expenses were considered. We note, however, that this amount did not account for the $10,000.00 in credit card debt Wife had incurred for her own attorney's fees, on which the trial court credited her testimony that she was paying $600.00 per month. Additionally, by the time the order awarding attorney's fees to Husband was entered, the trial court had granted Husband's motion to terminate child support. We conclude that the trial court erroneously declined to consider the financial evidence presented during the modification trial in awarding attorney's fees to Husband and thereby employed reasoning that would cause an injustice to Wife. *See In re Estate of Greenamyre*, 219 S.W.3d at 886 ("[A] trial court will be found to have 'abused its discretion' only when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party."). We therefore reverse the trial court's award of attorney's fees to Husband.

## VII. Attorney's Fees on Appeal

Each party has respectively requested that this Court grant attorney's fees on appeal. Having determined that Tennessee Code Annotated § 36-5-121(g)(2)(C) applies

34

to this action and that Wife's claim that she was enforcing the MDA was unfounded, we decline Wife's request for an award of attorney's fees on appeal. Also having determined that Husband was not entitled to an award of attorney's fees as alimony *in solido* at trial, we further determine that Husband is not entitled to an award of attorney's fees on appeal.

## VIII. Conclusion

For the reasons stated above, we affirm the trial court's suspension of Husband's transitional alimony obligation to Wife, retroactive to October 15, 2015. We reverse the trial court's award of attorney's fees and costs to Husband. We decline to award attorney's fees on appeal to either party. This case is remanded to the trial court, pursuant to applicable law, for proceedings consistent with this opinion and collection of costs assessed below. Costs on appeal are taxed one-half to the appellant, Melissa Marie Scherzer, and one-half to the appellee, Dale Robert Scherzer.

_____
THOMAS R. FRIERSON, II, JUDGE